Robert BOGARD, etc.; et al., Plaintiffs,

Larry Dixon; et al., Plaintiff-Intervenors,

v.

Walker HOBBIE, etc.; et al.,
Defendants,

Alabama Republican Executive Committee, Defendant-Intervenor.

Civ. No. 83–H–604–N.

United States District Court,
M.D. Alabama, N.D.

July 27, 1983.

Julian McPhillips, Jr., McPhillips & De-Bardelaben, Montgomery, Ala., for plaintiffs.

Fred T. Enslen, Jr., Argo & Enslen, Montgomery, Ala., for plaintiff-intervenor Dixon.

Calvin D. Biggers, Tuskegee, Ala., for plaintiff-intervenor Biggers.

Linda Breland, Asst. Atty. Gen., Montgomery, Ala., for defendants Hobbie & Graddick.

Kenneth Wallis and Bryan Morgan, Montgomery, Ala., for defendant Wallace.

Redding Pitt, Secretary of State, Montgomery, Ala., for defendant Siegelman.

Julian D. Butler, Butler & Royer, Huntsville, Ala., for defendants Knight and State Democratic Executive Committee of Alabama.

Perry O. Hooper, Montgomery, Ala., for defendant-intervenor Ala. Republican Exec. Comm.

## MEMORANDUM OPINION

HOBBS, District Judge.

Plaintiffs brought this action on June 14, 1983, contending that defendant Governor Wallace either will not call a primary election for the fall of 1983, or that he will not set a date for a general election with sufficient time to hold primary elections. Plaintiffs allege that if primaries are not scheduled and held for the election of the Alabama Legislature in 1983, the intent of the court's opinion in *Burton v. Hobbie,* 561 F.Supp. 1029, entered April 11, 1983, will be frustrated. Hearings were held June 24, July 15 and 22, 1983, the latter being a joint hearing before the court in this cause and the reconstituted three-judge court in *Burton.*

This Court holds that the April 11 order of the *Burton* court is not violated if a political party chooses not to select its nominees in a primary, but the Court holds that in the 1983 mandated general election, a political party must be given the choice of whether to have its party nominees selected in a state conducted primary.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court now enters its findings of fact and conclusions of law.

### BACKGROUND

Following the 1982 elections, the Attorney General of the United States rejected the redistricting plan under which the 1982 elections for the Alabama Legislature were held. The *Burton* court had given notice in its June 21, 1982 opinion that if the Attorney General rejected the redistricting plan under which the legislators were elected in the 1982 elections, the legislators would not serve beyond December 31, 1983. *Burton v. Hobbie,* 543 F.Supp. 235 (M.D.Ala.1982). When the Attorney General rejected the redistricting plan under which the 1982 elections were held, the Alabama Legislature tried again to set up a redistricting plan acceptable to the Attorney General and the *Burton* court. The Legislature succeeded by passing Act No. 83–154. After its preclearance by the Attorney General, the parties in *Burton* jointly requested that the *Burton* court permit the legislators elected in 1982 to serve out a full four year term. The *Burton* court pointed out that clear and unequivocal notice had been given that if the Attorney General did not approve the redistricting of Act No. 82–629 as modified by the *Burton* court, the 1982 elections would be for a one year term only. Accordingly, the *Burton* court ordered elections for all members of the Alabama Legislature in 1983.

### ISSUE

The April 11 order did not specify the date on which the general election would be held, nor did it specifically address the issue of primary elections. On July 8, 1983, Governor Wallace declared the general election

for September 27, 1983, which date did not leave sufficient time for primary elections. All the parties in this cause have agreed that primary elections cannot be held in the time now remaining before the general election set on September 27. The determinative question before the Court, therefore, is whether the failure to hold primary elections violates the intent of the *Burton* court in its April 11 order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

An Alabama statute provides:

Primary elections are not compulsory. A political party may, by its state executive committee, elect whether it will come under the primary election law. All political parties are presumed to have accepted and come under the provisions of the primary election law, but any political party may signify its election not to accept and come under the primary election law by filing with the secretary of state, at least 60 days before the date herein fixed for the holding of any general primary election, a statement of the action of its state executive committee, certified by its chairman and secretary, which statement shall contain a copy of the resolution or motion adopted declining to accept and come under the primary election law. If a political party declines to accept and come under the primary election law, it shall not change its action and accept and come under the primary election law until after the next general election held thereafter. The governing body of a political party may determine from time to time what party officers shall be elected in the primary; provided, that candidates for all party offices shall be elected under the provisions of this chapter unless the method of their election is otherwise directed by the governing body of the party involved. *Ala.Code* § 17–16–5 (1975)

Plaintiffs contend that irrespective of the plain statutory provision that a political party is not required to have a primary, primaries are required for the 1983 election of members to the Alabama Legislature because such primaries were intended by the three-judge court in *Burton v. Hobbie.*

The three members of the Court in *Burton* contemplated that primary elections would be held at which nominees of the Democratic and Republican Parties would be selected. The Democratic Party for several decades, and the Republican Party for more than ten years, have used the primary process as the method of selecting their nominees. The fact that in some special elections, when an unanticipated and isolated vacancy occurred, a political party has not selected its nominee in a primary, did not cause the *Burton* court to entertain the thought that these political parties would choose to select their party nominees by executive committee rather than by party primaries. As noted in a decision by the reconstituted court in *Burton* decided this date, because the *Burton* court fully expected party primaries does not mean that its April 11 order compels such primaries. The *Burton* court has held this date that its order does not compel party primaries, and this Court in the instant single judge case agrees.

Plaintiffs have made strong and appealing arguments why Democratic nominees for the general election should be selected by party primary rather than by the State Democratic Executive Committee (SDEC). Since the quoted Alabama statute leaves this decision to the political parties, these arguments are properly addressed to the SDEC and not to a federal court. Some of the plaintiffs testified that a political party should be required as a matter of law to use the primary process for selecting its nominees. This argument should be addressed to the Alabama Legislature which has clearly provided otherwise. Indeed, defendant SDEC and defendant intervenor Alabama Republican Executive Committee argue that they have a constitutionally protected right to select their nominees in accordance with their own preferences, and neither the Legislature nor a court can deny them this right consistent with the First Amendment of the Constitution. This

Court need not decide the sweep of these contentions since neither the Legislature nor the court's order in *Burton* has affected their right.

Plaintiffs have argued that the failure to have party primaries frustrates the court's order in *Burton* in four ways.

First, plaintiffs argue that selection by the SDEC is "tantamount to election," and for this reason that the order in *Burton* requiring a 1983 election is frustrated. It is a fact that in the 1982 general election, the Democratic nominee was elected without opposition in approximately seventy percent of the races for the Alabama Legislature. Republican nominees were elected in less than eight percent of the House and Senate seats in the Alabama Legislature.

According to the testimony, it would appear that the SDEC unless otherwise ordered by this Court will select the Democratic nominees for all legislative seats in lieu of the customary open primary. But these nominees if selected by the SDEC will have been selected by a process which is expressly authorized by Alabama statute, and they will have to contend in a general election against whatever opposition presents itself.

Second, plaintiffs contend that the SDEC has a substantially smaller percentage of black representation than the legislative districts from which nominees would be selected in the primary, and the black vote would thereby be diluted. The SDEC contends that this Court need not concern itself with the possibility that the SDEC will discriminate against blacks or that fewer black legislators will result from SDEC selection

than from a primary. The SDEC makes this contention with confidence, because its leaders have been told by representatives of the Office of the Attorney General of the United States that the Attorney General will not approve the method of selecting nominees of the Democratic Party unless two additional blacks are nominated for seats presently occupied by white members. Defendant Knight, chairman of the SDEC, has identified these two districts as House Districts 19 and 67. Mr. Knight testified that he was confident a majority of the members of the SDEC would go along with an increase of black representation in the Legislature from 17 to 19 when they are told that it is the only way to get the approval of the Attorney General.[1] In fact, defendants assert that forcing an open primary would be a dilution of black representation in the Alabama Legislature. Based on the testimony of defendant Knight and Joe Reed, a black member of the SDEC, the Court agrees that the probabilities are very strong that selection of party nominees by the SDEC would not bring about any reduction in black representation, nor would it otherwise discriminate against blacks.[2]

Third, plaintiffs argue that nomination by the SDEC will have the effect of freezing in place for another three years the legislators elected in the 1982 November election. The *Burton* court stated in its April order that its intent by ordering 1983 elections was in part remedial so as not to encourage future legislators to be dilatory by extending their stay in office. Plaintiffs contend, therefore, that SDEC nominations will frustrate this remedial purpose of the

---

**1.** Under Section 5 of the Voting Rights Act of 1965, no change in election procedures can be effected without the approval of the Attorney General of the United States or a federal court in the District of Columbia. Defendants conceded that they must secure the approval of the Attorney General or a federal court in the District of Columbia before Democratic Party nominees could be selected other than by primary elections. This is true because the Democratic Party in Alabama for decades has used a party primary when all members of the Legislature were nominated for election. The Attorney General under Section 5 must determine whether nomination by the SDEC instead of an

open primary has the purpose or effect of denying or abridging the right to vote on account of race.

**2.** The Constitution does not require that any specific number or percentage of blacks be elected to the Legislature any more than it requires a specified number to be elected to the Congress of the United States. But this Court would feel compelled to require primaries if it could be shown that the purpose of eliminating a party primary was to discriminate against blacks. This purpose was not shown.

*Burton* court. This court finds the evidence less than persuasive that the selection of nominees by the SDEC will "freeze in" incumbents. The fact that many incumbents probably would be nominated by either an SDEC selection or open primary process does not violate the *Burton* decree. Dilatory tactics are not encouraged whether legislators suffer the hazards of nomination by primary or the SDEC. Moreover, the evidence was convincing that the SDEC's proposed abandonment of the primary process was for reasons other than "freezing in" incumbents.

Fourth, plaintiffs point out that the SDEC is more malapportioned or less in compliance with the one-man, one-vote requirement of the Fourteenth Amendment of the Constitution than the legislative districts in the 1982 election,[3] and that to permit "the malapportioned" SDEC to pick its party nominees violates the *Burton* April order. But political parties have never been required to conform to the requirement of one-man, one-vote. *Ripon Society, Inc. v. National Republican Party*, 525 F.2d 567 (D.C.Cir.1975), *cert. den.*, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). In no election is it likely that the SDEC or the Alabama Republican Executive Committee will be organized in strict compliance with the one-man, one-vote rule, but this does not invalidate Alabama's statute authorizing a political party to opt out of holding a primary and otherwise selecting its nominees according to the direction of "the governing body of the party involved." *Ala. Code* § 17–16–5 (1975). The *Burton v. Hobbie* three-judge court stated in its opinion this date:

> This Court's April 11 order, however, did not change the law in Alabama to require that political parties hold primaries; nor did it ignore settled constitutional law that political parties need not be organized in compliance with one-man, one-vote standards.

*Option of Political Party to Have Primary*

Whatever may have been the *Burton* court's expectation when it ordered 1983 elections, it has not required that a political party select its nominees in a primary if it chooses to do otherwise. But the opinion this date by the three-judge court in *Burton* makes clear that the fall election required by its April 11 order is a general election. The 1983 election may be special in that it was specially ordered by the *Burton* court. But an election which selects every one of the one hundred forty legislators who will serve the State of Alabama for the next three years, and is compelled because the redistricting plan was constitutionally unacceptable at the time of the 1982 election, brings into operation the statutory provision for a general, rather than a special, election. Since the 1983 fall election is a general election, state law does not allow the Governor to deny a primary to a party which desires to have one preliminary to such a general election. *Ala.Code* § 17–16–5 (1975).

The Governor's selection on July 8 of the date of September 27 for the general election has done precisely this—even though the Governor was notified of the desire of the governing body of the Alabama Republican Party to have a primary.[4] Accordingly, the Governor must set another date for the 1983 general election forthwith, but no later than seven days from the date of this order, that will allow either party to have a primary if it so chooses. If either political party chooses not to have its nominees for the general election selected in a primary election, it shall "signify its election not to accept and come under the primary election law by filing with the secretary of state"

---

3. The SDEC does not purport to be apportioned in accordance with one-man, one-vote. One hundred five of its one hundred thirty-one members were elected in 1978 from the then existing legislative districts. The remainder of the delegates were selected from groups who have traditionally been identified with the Democratic Party.

4. Although the SDEC apparently would give notice pursuant to statute that it does not choose to select its nominees by primary, the Alabama Republican Executive Committee has stated its preference for a primary, and under the law it is entitled so to do.

**482**

within fifteen days of the day the Governor announces the date for the general election "a statement of the action of its state executive committee, certified by its chairman and secretary, which statement shall contain a copy of the resolution or motion adopted declining to accept and come under the primary election law." *Ala.Code* § 17–16–5 (1975). The failure of a political party to file such a statement shall indicate the party's decision to have its nominees selected in a state conducted primary. The dates for the general election, primaries, qualification dates and so forth, unless both parties file the aforesaid statement, should be worked out between the Governor and the Secretary of State, but the general election should be approximately sixty days after any primary election and all dates should be set at such a time as will allow for orderly primaries and fair elections.

A separate judgment will be entered in accordance with this memorandum opinion.